## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**CHERELLE GERMAN**                                              **PETITIONER**

**v.**                                              **No. 3:11CV100-MPM-SAA**

**JESSIE J. STREETER, ET AL.**                                              **RESPONDENTS**

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Cherelle German for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has responded to the petition. German has filed a traverse, and the matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

### Procedural Posture

Cherelle German is in the custody of the Mississippi Department of Corrections and is currently housed at the Marshall County Correctional Facility in Holly Springs, Mississippi. He was convicted of felony child abuse in the Circuit Court of Lafayette County, Mississippi and sentenced to a term of forty years, with ten years suspended, for a total of thirty years to be served in the custody of the Mississippi Department of Corrections with five years of post-release supervision. **S.C.R., Vol. 1, pg. 28 and Vol. 3, pp. 212-213.**

German appealed his conviction and sentence to the Mississippi Supreme Court, raising the following grounds for relief (as stated by Petitioner through counsel):

Issue No. 1:     Was German's trial rendered unfair by ineffective defense counsel?

Issue No. 2:     Whether the trial court should have excluded polygraph evidence?

Issue No. 3:     Whether the verdict is contrary to the weight of the evidence?

The Mississippi Court of Appeals affirmed German's conviction and sentence. *German v. State*, 30

So.3d 348 (Miss. App. 2009), *reh'g. denied* December 8, 2009, *cert. denied* March 18, 2010 (Cause No. 2008-KA-01277-COA).

German then sought post-conviction collateral relief in the Mississippi Supreme Court alleging that "he was denied due process of law."[1] The Mississippi Supreme Court denied German's request to proceed with a motion for post-conviction collateral relief, stating "[a]fter due consideration, the panel finds that the application should be denied."

4. In his federal habeas petition, German raises the following grounds for relief (restated by the court for the purpose of brevity and clarity):

**Ground One.** Ineffective assistance of counsel:

    A. Failing to object to the admission of testimony from a sheriff's department investigator which amounted to a medical opinion and was based on hearsay;

    B. Failing to properly challenge the admission of German's statements to law enforcement;

    C. Stipulating that the victim's injuries were profound, a designation which exceeded the State's burden of proof;

    D. Failing to submit a jury instruction on circumstantial evidence.

**Ground Two.** The trial court committed reversible error in allowing testimony regarding a planned polygraph examination.

**Ground Three.** The evidence was insufficient to support the verdict.

German has exhausted his state court remedies as to the issues raised in the instant petition, and return to the state court on these issues would be futile.

---

[1] German states that "[t]hese claims are set out in the Post-Conviction Relief Motion which will be filed in this case;" however, he did not attach any such motion to his application for permission to proceed with a post-conviction motion in the Mississippi Supreme Court.

## Grounds Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered all ground in the instant petition on the merits and decided those issues against German; hence, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120

S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of federal law* if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to any grounds for relief in the instant petition for a writ of *habeas corpus*.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if the facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

### Ground One: Ineffective Assistance of Counsel

In Ground One, German raises several allegations of ineffective assistance of counsel, which the court must address under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment.

*Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997).

German first complains that trial counsel was ineffective in failing to object to the testimony of Scott Mills, an investigator with the Lafayette County Sheriff's Department, regarding the victim's injuries. German argues that this testimony constituted a medical opinion based on hearsay. During direct examination, Investigator Mills described several photographs he had taken of the infant's injuries, which had been admitted into evidence as State's Exhibits 1, 2, and 3. **S.C.R., Vol. 2, pg. 47**. In describing one of these photographs, Mills stated "you will also notice around the top of both of her eyes it appears to be redness like blood pooling behind her eyes and I observed that myself, also on her eyelids, tops of her eyelids." **S.C.R., Vol. 2, pg. 51.** This testimony reflects Mills' own observations and was, therefore, not hearsay. For this reason, the statement was not a medical opinion, but a description of the infant's obvious injuries Mills observed. The appellate court considered this testimony on direct appeal and held, "[w]e are not persuaded that Detective Mills was offering any medical conclusion that only an expert could give; thus, we cannot find German's trial counsel was ineffective for failing to object to the first statement." *German*, 30 So.3d at 352. An

attorney renders effective assistance when he chooses not to lodge meritless objection. *See Clark v. Collins*, 19 F. 3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite.").

Mills also stated "[i]f you will look above the eyes on the eyelid you will see the redness which is described to me as [*sic*] by the doctors as blood beginning to pool behind her eyelids." **S.C.R., Vol. 2, pg. 51.** The appellate court also considered this testimony on direct appeal and noted that, while the statement was hearsay, German had not demonstrated that he was prejudiced by counsel's decision not to object and, therefore, was not entitled to relief. *German*, 30 So.3d at 352. The statement was merely cumulative to Detective Mills' earlier comment – and came after the photograph in question had been published to the jury. **S.C.R,., Vol. 2, pg. 51.** German has not shown that he suffered prejudice by the admission of Mills' second statement; as such, German is not entitled to *habeas corpus* relief on this claim.

German next complains that trial counsel did not object to the admission of his written statements. In discussing this issue, however, German focuses on the fact that trial counsel elicited testimony regarding German's agreement to submit to a polygraph examination – which did not take place. Counsel also provided German's second written statement made after he initially met with the polygraph examiner. The court will address the substance of this claim in the discussion below regarding testimony about German's scheduled – then canceled – polygraph examination.

German also claims that trial counsel erred in stipulating that the infant's injuries were "profound," a determination German believes to have exceeded the State's burden of proof. During the direct examination of Toya Hilliard, the mother of the abused infant, the State elicited testimony regarding the severity of the two-month-old's injuries. **S.C.R., Vol. 2, pg. 139.** This questioning

followed the testimony of both Dr. Waller and Dr. Stidham, each of whom had treated the baby. Each doctor provided detailed accounts of the severe and debilitating injuries. Dr. Stidham testified that the baby had suffered bleeding over the surface of her brain, swelling of the brain, hemorrhages in the retina and was having intense seizures. **S.C.R., Vol. 2, pg. 91.** He stated that, during the seizures, the infant would stop breathing, and, therefore, she had to be placed on a ventilator. **S.C.R., Vol. 2, pg. 92**. Dr. Waller, who had treated the infant in the years following her initial injury, testified that baby was blind, suffered from a seizure disorder, had severe developmental delays, and "profound neurological deficits." **S.C.R., Vol. 2, pg. 125.** Dr. Waller testified that he did not know if the infant would ever be able to eat by mouth – and might require a feeding tube for the rest of her life. **S.C.R., Vol. 2, pg. 125**. Dr. Waller stated that the child would never walk and he did not know if she would ever be able to speak. **S.C.R., Vol. 2, pg. 125**.

Because the jury had already been presented with extensive testimony about the infant's devastating injuries, in addition to evidence of her medical records, trial counsel objected to the additional testimony by Ms. Hilliard on this topic as unfairly prejudicial. **S.C.R., Vol. 2, pg. 139**. The State submitted that, if the defense would stipulate that "the child is severely and profoundly injured, neurologically and otherwise" then they would abandon this line of questioning. **S.C.R., Vol. 2, pg. 140.** Trial counsel made clear that any such stipulation would not extend to who caused the injury or how the injury was suffered, but did stipulate that the child was seriously injured. **S.C.R., Vol. 2, pg. 140**. As such, the trial judge informed the jury, "[y]ou should accept it as an adjudicated fact just as if it was a proven and undisputed manner [*sic*] from the witness stand that the child is severely and profoundly injured." **S.C.R., Vol. 2, pg. 140.**

The appellate court held that "German's trial counsel was attempting to prevent the jury from hearing any more testimony about the lingering effects of [the infant's] injuries." *German*, 30 So.3d at 352. As such, the state court held that trial counsel could not be considered deficient in agreeing to the stipulation. *Id.* Counsel's trial strategy was to limit the damage from any additional testimony regarding the ongoing effects of the infant's extensive injuries. Human beings have a natural gut-wrenching reaction when confronted with horrifying injuries inflicted upon a helpless infant, and the stipulation likely limited the jurors' reactions to such testimony. This is a time-tested strategy in many situations to keep the other party from heaping on ever greater amounts of harmful testimony. The state court was correct in holding that trial counsel was not deficient in making this choice. This issue is without merit and will be denied.

German also argues that trial counsel should have submitted a circumstantial evidence instruction because he did not admit that he shook the baby. However, according to Detective Mills' testimony, German said in his second statement that "the baby was crying a lot, wouldn't be quiet and he finally picked the baby up underneath it's armpits and shook the baby he stated one time." **S.C.R., Vol. 2, pg. 60.** The statement, which German himself wrote, was entered into evidence as Exhibit 11**. S.C.R., Vol. 2, pg. 60 and Vol. 3, pg. 151.** The appellate court held that "German's 'admission to an important element of [the] crime negates the need for a circumstantial [-]evidence instruction.' *Smith v. State*, 981 So.2d 1025, 1032 (¶ 33) (Miss. Ct. App. 2008)." *German*, 30 So.3d at 352. Such an instruction is only warranted when *all* of the evidence adduced against a defendant is circumstantial. *Id.* As such, the appellate court held that trial counsel could not be considered deficient in choosing not to offer such an instruction. The state court was correct in holding that trial counsel, in opting not to request such an instruction, provided effective assistance in German's defense.

German has proved neither that trial counsel was deficient, nor that he suffered any prejudice as a result of any of counsel's alleged errors as raised in Ground One. The state appellate court's finding that trial counsel rendered effective assistance was neither contrary to nor an unreasonably application of clearly established federal law. Nor was the state court's finding unreasonable in light of the evidence presented. As such, German is not entitled to federal *habeas corpus* as to Ground One of the instant petition.

### Ground Two: Denial of Due Process Regarding
### Canceled Polygraph Examination

In Ground Two, German argues that he was denied due process when the trial court allowed testimony regarding his scheduled polygraph examination – and that trial counsel was ineffective for eliciting that information. During Detective Mills' cross-examination, in response to Mills' earlier testimony that German had met with Mills and provided a statement, defense counsel asked why German had been in his presence to begin with. **S.C.R., Vol. 2, pg. 63.** At that point, the State requested a bench conference in order to alert the trial court to a possible problem. The State noted that German was present for a scheduled polygraph examination, but "instead of going through with it said I have to tell you something and went and admitted what is contained in the statement." **S.C.R., Vol. 2, pg. 64.** The prosecutor noted that the State had purposely avoided the subject out of concern that any testimony regarding the scheduled examination might be grounds for a mistrial. **S.C.R., Vol. 2, pg. 65**. Defense counsel argued that he was not seeking testimony that there had been a polygraph examination, but that he was concerned that Mills' testimony on direct examination left the jury with the impression that German had simply come to law enforcement for the purpose of confessing. **S.C.R., Vol. 2, pp. 65-66.** During the discussion of this issue the trial judge made the following record:

He [the prosecutor] is fearful of any testimony about polygraph. But I think if we have a clear understanding that you think it helps your client then I think the usual error that might be associated with discussing polygraph is probably waived by you. I just want to make sure the record is clear because it's not, you know, a mistake or misunderstanding and that this is a deliberate tactical maneuver on your part which is fine. That is your decision. But it has to be relevant and I want you to state for the relevance of it so that I can make sure the record is clear and I can rule on it. What is the relevance of him coming in to show that he came in to be polygraphed rather than he came in to confess.

**S.C.R., Vol. 2, pp. 68-69.** The State then informed the trial court that German had actually been in custody for a misdemeanor at the time. **S.C.R., Vol. 2, pg. 69.** The prosecutor further noted that, since the polygraph examination had been scheduled for the next day, Mills asked German if he wanted to go ahead with it "but rather than give the polygraph he made an admission and there was no polygraph taken." **S.C.R., Vol. 2, pg. 69.** The judge then stated:

Well, I certainly don't want to limit your cross examination and by pre determining whatever may or may not be helpful or harmful to you. But you know, all the body of law on polygraph talks about taking the polygraph and the results of the polygraph and this clearly has nothing to do with that because if you are representing to me accurately there was no polygraph taken.

**S.C.R., Vol. 2, pg. 72**. Defense counsel then argued that German had first talked with the polygraph examiner, although he was not examined, and the examiner "took what [German] said out of context and took it to Detective Mills. My client was under duress and the jury needs to know all that."

**S.C.R., Vol. 2, pg. 73**. Finally the trial court ruled that the witness could respond to questions regarding the polygraph.

The appellate court considered this issue and held:

In terms of whether or not it was reversible error for the trial court to allow this evidence into the record, we find that it was not reversible error. After hearing German's trial counsel's reasons for introducing the evidence related to the polygraph test, the trial court stated that it understood that German was trying to establish the nature of the interrogation. "Whenever a defendant makes a calculated, tactical choice and comes out on the losing end, he cannot then shift the burden to the [S]tate or to the

trial [court]." *Lancaster v. State*, 472 So.2d 363, 366 (Miss.1985). This issue is without merit.

*German*, 30 So.3d at 353-354. Neither the fact that a polygraph test was administered nor the results of any such test are admissible at trial under Mississippi law. *See Fagan v. State*, 894 So. 2d 576 (Miss. 2004) and *Carr v.State*, 655 So. 2d 824 (Miss. 1995). In addition, state rules regarding the inadmissibility of polygraph evidence have been held constitutional by the United States Supreme Court. *See U.S. v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). Moreover, a claim challenging only the state court's ruling on the admissibility of certain evidence under state law is precluded from federal *habeas corpus* review, because the rulings of state courts on evidentiary matters are solely issues of state law. "A state court's evidentiary rulings present cognizable habeas claims *only* if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett,* 176 F.3d 809, 820 (5th Cir. 1999) (citing *Cupit v. Whitley,* 28 F.3d 532, 536 (5th Cir.1994)(emphasis added).

In the present case, the testimony elicited established only that a polygraph examination had been scheduled, but not conducted. Counsel was trying to show that German had not simply marched into the police station to confess – and that his ultimate statement that he had shaken the baby was taken out of context and under duress. No one testified that a polygraph examination took place – or that the examiner had come to a conclusion. As such, German cannot show that the State violated one of his constitutional rights. Therefore, the trial court's ruling that this testimony was admissible cannot be reviewed through federal *habeas corpus*. Even if the claim were valid, the appellate court's ruling on the record before it was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Further, the decision was not based on an unreasonable determination of the facts in light of the evidence. Thus,

German is not entitled to federal *habeas corpus* relief on the basis of this claim.

Neither was defense counsel's decision to elicit this testimony deficient performance. The appellate court considered this issue and held:

> In terms of whether or not German's trial counsel was ineffective for entering this evidence into the record, we conclude that this falls under the scope of trial strategy. Much of German's defense was built around the information contained in his second statement of January 4, 2006. This second statement is the first time German stated that he shook Makia. German attempted to show the jury that he was tricked into making this statement during his interrogation by the polygraph examiner.

*German*, 30 So.3d at 353. Defense counsel's decision was a matter of trial strategy. The defense wanted to convince the jury that German did not seek out law enforcement on his own in order to confess to abusing the child. Indeed, the lynchpin of German's defense was that the infant's injuries occurred during a fall in her bouncer while German was out of the room – and that his admission was the result of duress. The court finds that this was a colorable argument in light of the evidence as the trial progressed, and counsel was not deficient for eliciting such testimony because it supported German's defense. In any event, German has not shown that he suffered prejudiced by counsel's decision. For these reasons, the state appellate court's ruling on this issue was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Further, the decision was not based on an unreasonable determination of the facts in light of the evidence. As such, German is not entitled to federal *habeas corpus* relief on this ineffective assistance of counsel claim.

### Ground Three:  Insufficient Evidence to Support the Verdict

Finally, German alleges that there was insufficient evidence to support his conviction.[2]  A

---

[2]  On direct appeal, German presented this claim as a challenge to the weight of the evidence. However, based on his arguments, the appellate court interpreted the argument as a claim that the evidence was insufficient.

challenge to the sufficiency of the evidence can support a claim for habeas relief *only* if the evidence, when viewed in the light most favorable to the State is such that *no* reasonable fact finder "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Marler v. Blackburn*, 777 F.2d 1007, 1011 (5th Cir. 1985). This standard of review "preserves the integrity of the trier of fact as the weigher of the evidence." *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983). Further, the *Jackson* standard allows the trier of fact to find the evidence sufficient to support a conviction even if "the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992).

German argues that he did not admit to shaking the infant and, as such, the case against him was circumstantial in nature. German, however, admitted that he gave a statement – in his own handwriting – to Detective Mills. **S.C.R., Vol. 3, pg. 151**. The statement included the admission, "I shook her one time then put her down . . . ." Though German attempted at trial to deny that he had actually shaken the baby, claiming, "I just grabbed her like that to make sure to see if she was alright," he did not deny that he had written the statement to the contrary. **S.C.R., Vol. 3, pg. 152.** Neither was German able to explain why he failed to give such an explanation in his statement. **S.C.R., Vol. 3, pg. 152.** Dr. Stidham testified that he could state with "[v]irtually one hundred percent certainty" that the infant's injuries "would require a very violent shaking against sort of a surface." **S.C.R., Vol. 2, pg. 102.** He also testified that the surface was "probably not a hard surface because there would have been more external injury." **S.C.R., Vol. 2, pg. 102.** In addition, Dr. Stidham testified that he excluded the possibility of the only other potential cause for the baby's retinal hemorrhages through testing the clotting capabilities of her blood. **S.C.R., Vol. 2, pg. 96.** Dr. Stidham conceded that, while it was

remotely possible to shake a baby bouncer hard enough to cause the injuries, tipping over in the bouncer would not be sufficient to cause the infant's skull fracture. **S.C.R., Vol. 2, pp. 103-104.**

Dr. Waller testified that the bruising on both sides of the baby's face was not consistent with German's story that she had fallen. **S.C.R., Vol. 2, pg. 116.** Dr. Waller also stated that, upon viewing the baby's CT scans he "was concerned that the child had been abused." **S.C.R., Vol. 2, pg. 116.** Toya Hilliard, the victim's mother, testified that, at the time of the injury, German was alone in the house with the infant and her two-year-old son. **S.C.R., Vol. 2, pg. 132**. In fact, German acknowledged in his statement that he had been alone with the babies. **S.C.R., Vol. 3, pg. 151.** At trial, German did not legitimately contest the fact that he had shaken the infant; instead he challenged the force with which he had shaken her and the number of times he had done so.

The appellate court considered this evidence and held:

> However, German admitted in a handwritten statement that he had shaken Makia. Although German did not admit to the severity of the shaking, there was testimony from two doctors that Makia's injuries could not have been caused by a fall from a bouncy seat. One physician specifically stated that Makia's injuries were exclusively caused by a severe shake with the impact of her head hitting a surface. German admitted that he was the only adult present when Makia's bouncy seat supposedly overturned. From the evidence presented, we find that reasonable, fair-minded jurors could have concluded that German was guilty of felony child abuse. This issue is without merit.

*German*, 30 So.3d at 354. The jury was presented with two competing theories of the child's injuries, and they decided that the evidence supported the State's theory and proved German's guilt beyond reasonable doubt. The record amply supports the jury's verdict. The appellate court's decision was, therefore, neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Neither was the decision based on an unreasonable determination of the facts in light of the evidence. Thus, German is not entitled to

federal *habeas corpus* relief based on the allegations in Ground Three.

## Conclusion

In sum, for the reasons set forth above, the claims in the instant petition for a writ of *habeas corpus* are without merit, and it will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 24th day of July, 2014.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**